No. 4070

Second Circuit

(Second Division)

REED v. ROBBINS

(March 16, 1932. Opinion and Decree.)

Wise, Randolph, Rendall & Freyer, of Shreveport, attorneys for defendant, appellant.

C. B. Prothro, of Shreveport, attorney for plaintiff, appellee.

TALIAFERRO, J. Plaintiff seeks to recover of defendant judgment for $156.62 alleged balance due on open account for groceries. Defendant denies that he owes plaintiff any amount. He admits that at one time he did owe the account sued on, but that in March, 1930, he paid same in full by selling to plaintiff a motor car, subject to mortgage to the knowledge of

plaintiff, the terms of which sale being that said account should be, and was, canceled, and in addition plaintiff agreed to pay $97 to defendant in cash or groceries, but he failed to comply with this part of the sale. Defendant prays that plaintiff's suit be dismissed and for judgment in reconvention for $97.

The lower court gave judgment for plaintiff and defendant appealed.

The testimony of the respective sides is hopelessly conflicting and irreconcilable.

Plaintiff's version of the transaction between him and defendant involving sale of the automobile is this: That defendant represented to him that the chattel mortgage against the car amounted to $360 and he was willing to sell the car to him if he (plaintiff) would assume this mortgage indebtedness and cancel out the grocery account sued on; that he (plaintiff) agreed to this proposition, took possession of the car about April 1, 1930, delivered to defendant the various bills making up the account, and the following day drove over to Minden in Webster parish to ascertain from the finance company the exact amount held by it against the car; that he then learned, to his surprise, that the mortgage debt amounted to $445.50 and not $360, as declared by defendant; that he secured written statement showing the amount due and on that day called it to defendant's attention and he agreed to come to plaintiff's store to make an adjustment; he made other efforts afterwards to see defendant about the difference but was unable to contact with him, and finally he carried the car to his residence and left it there. This was on April 14th or 15th. The finance company, a few days later, found the car there and repossessed it. Plaintiff's position is that he was not willing to take over the car for the true mortgage indebtedness against it and release

defendant from payment of the account; therefore, after defendant would not adjust the difference, the car was returned to him. Plaintiff is corroborated by the testimony of his wife and by a Mr. Green, kinsman of the wife, with regard to the price of the car and terms of the trade with defendant.

Defendant testified that plaintiff assumed payment of the balance due on the mortgage against the car, regardless of the amount, and in addition agreed to pay him $97 in cash or groceries and release him from the account. He states that he had paid out on the car's price $338 but was willing to knock off $75, leaving $263, from which the account was to be deducted. If this version of the matter is correct the car would have cost plaintiff $708.50. The initial price when sold in August, 1929, was $769.

It appears that plaintiff was only willing to pay $480 for the car, and when he and defendant first began discussing the trade (about middle of March) the account showed a balance of around $120. However, as the trade progressed the grocery bill grew larger, and at date the trade was closed it had reached the amount sued for. Plaintiff testified that in order to clear the account and enable defendant to start out with a clean slate, he did agree to include the total of the account as it stood when the car trade was closed.

At the date the trade was closed defendant was in arrears on the car notes for more than a month and the finance company was pressing for payment. He was also unable to meet his grocery bill, all due to lack of regular employment for some months immediately prior.

It is argued by defendant's counsel that as plaintiff kept the car for nearly two weeks after knowing the true amount due on the mortgage debt against it that fact

is convincing evidence that the sale was made on the terms claimed by defendant. Plaintiff meets this contention by saying he was endeavoring to have defendant adjust the difference of some $85, and had little success in getting in touch with him. Mrs. Robbins testified that plaintiff did call several times for Mr. Robbins immediately before the car was returned.

It is obvious defendant was anxious to dispose of the car to plaintiff and rid himself of the obligation of paying the balance due on it and at same time clear the account due plaintiff; and it is likely plaintiff welcomed the chance to acquire the car for use in his business, at a fair price, and collect defendant's account.

Plaintiff is shown to be a man of some business experience, and it does not seem reasonable that he would assume payment of the balance due on the car without having some information, deemed by him to be dependable, fixing the amount he was obligating himself to pay. Mrs. Robbins testified that as the trade for the car was being closed out, in fact the time delivery was made to plaintiff, that she remarked to him that the notes unpaid against it were more than he thought. It was probably due to this remark that plaintiff, on day following, drove over to Minden to ascertain the exact balance against the car. It is also unlikely that he would be willing to pay $708.50 for a Ford car, costing originally $769, which had been in use for eight months. These circumstances weigh against defendant's contention, and in addition plaintiff's version of the details of the trade for the car is corroborated by two other witnesses, while the testimony of defendant virtually stands unsupported by that of other witnesses or circumstances.

The lower court rejected defendant's contention and accepted plaintiff's, and we think ruled correctly.